UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Evanston Insurance Company,<br><br>*Plaintiff*,<br><br>versus<br><br>Aurelio Mata, Charleston Concrete Construction, LLC, and Midtown Townhomes HPR Owners Association, Inc.,<br><br>*Defendants*. | C/A No. 2:26-cv-05729-BHH<br><br>**COMPLAINT** |

COMES NOW Plaintiff Evanston Insurance Company ("Evanston") who brings this action against Aurelio Mata, Charleston Concrete Construction, LLC, and Midtown Townhomes HPR Owners Association, Inc., based on the allegations set forth below.

**Nature of the Action**

1. This is a civil action seeking declarations pursuant to 28 U.S.C. § 2201 concerning the rights, duties, and obligations, if any, of Evanston Insurance Company ("Evanston") with respect to certain policies of commercial general liability insurance issued to Aurelio Mata with respect to the claims asserted by *Midtown Townhomes HPR Owners Association, Inc., and Karen Tinsley, Terry Headley, and Wayne Scarsella, Derivatively, on behalf of the Midtown Townhomes HPR Owners Association, Inc. v. Lennar Carolinas, LLC a/k/a Lennar Carolinas a/k/a Coastal Carolinas Division of Lennar a/k/a Lennar Corporation, Synchronicity, LLC d/b/a Synchronicity Land + Architecture, VR Engineers, Inc. d/b/a R-K Engineers & Builders, Charleston Concrete Construction, LLC, Alejandro Covarrubias, Aurelio Mata, Alpha Omega Construction Group, Inc., Insulation by Cohen's, LLC, SouthEnd Exteriors, Inc., Professional Builders Supply, LLC, CEBS Construction, LLC d/b/a CEBS Construction, NOVAC Construction, Inc., Kingspan*

*Insulation, LLC, ABC Supply Co. Inc., and John Doe # 12 – 40*, Civil Action No. 2022-CP-10-04509, pending in the Charleston County Court of Common Pleas (the "Underlying Lawsuit").

2. Specifically, Evanston issued a total of seven commercial general liability insurance policies to Aurelio Mata under the policy numbers and for the effective periods described below:

| **Exhibit to Complaint** | **Policy** | | **As Referenced Herein:** |
|---|---|---|---|
| | Policy No. | Effective Dates | |
| 1 | 3AA448314 | 1/15/21-1/15/22 | "Policy 1" |
| 2 | 3AA532519 | 1/15/22-1/15/23 | "Policy 2" |
| 3 | 3AA640108 | 2/3/23-2/3/24 | "Policy 3" |

A certified copy of each Policy is attached as Exhibits 1 – 3 as detailed above and incorporated herein by reference. Policy 1, Policy 2 and Policy 3 may hereinafter be collectively referred to as the "Policies".

3. A copy of the current and operative complaint filed by the Plaintiff HOA in the Underlying Lawsuit is attached as Exhibit 4. *See* Ex. 4, 3rd Amd. Compl., Sept. 17, 2025, Underlying Lawsuit.

4. Evanston contends Mata is not entitled to defense or indemnification under the Policies with respect to the claims raised in the Underlying Lawsuit.

5. Thus, a justiciable controversy exists between Mata and Evanston that requires declarations by this Court of the parties' respective rights, duties, and obligations under the Policies including, without limitation, the extent (if any) to which Evanston is obligated to defend or indemnify Mata in the Underlying Lawsuit under the Policies; the facts upon which the rights, duties and obligations (if any) of Evanston or Mata under the Policies will be determined; and any other rights, duties, or obligations (if any) of Evanston under the Policies in connection with any other claims asserted against Mata in the Underlying Lawsuit or otherwise involving the facts and circumstances giving rise to the claims asserted in the Underlying Lawsuit.

**Parties**

6. Evanston Insurance Company ("Evanston") is a corporation organized and existing under the laws of the State of Illinois with its principal place of business within the State of Illinois.

7. Upon information and belief, Aurelio Mata ("Mata") is a citizen of the State of South Carolina and resides in Charleston County.

8. Upon information and belief, Charleston Concrete Construction, LLC ("Charleston Concrete") is a limited liability company formed in South Carolina and conducting business in South Carolina.

9. Upon information and belief, the Midtown Townhomes HPR Owners Association, Inc. (the "HOA") is a non-profit corporation formed under the laws of South Carolina and is responsible for the management of the Midtown Townhomes Horizontal Property Regime in Mt. Pleasant, South Carolina.

**Jurisdiction and Venue**

10. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the case is between citizens of different states.

11. This Court has personal jurisdiction over Mata because he is a resident of Charleston County.

12. This Court has personal jurisdiction over Charleston Concrete because it is a South Carolina limited liability company conducting business in Charleston County and its sole member is a South Carolina citizen and resident.

13. This Court has personal jurisdiction over the HOA because it owns and/or is responsible for the management of common areas throughout the Midtown Townhomes residential development which is situated in Charleston County.

14. Venue is proper in the Charleston Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within the geographical confines of this judicial district.

15. Moreover, this Court has authority pursuant to 28 U.S.C. § 2201 to grant the declaratory and other relief requested by Evanston.

## Facts

### *The Underlying Lawsuit*

16. Upon information and belief, the Midtown Townhomes ("Midtown") residential subdivision was designed and constructed from approximately 2019 to 2022 in Mt. Pleasant, Charleston County, South Carolina. Midtown consists of fifteen (15) buildings containing a total of seventy-two (72) townhomes.

17. The Midtown development was designed and constructed by Lennar Carolinas, LLC, Lennar Carolinas, Coastal Carolinas Division of Lennar, and/or Lennar Corporation – three entities named as Defendants in the Underlying Lawsuit. These entities are collectively referred to as "Lennar".

18. In the Underlying Lawsuit, the HOA alleges, "[a]t the time the Certificates of Occupancy were issued, Midtown's Common Elements contained latent building defects." Ex. 4, 3rd Amd. Compl. ¶ 56, Sept. 17, 2025, Underlying Lawsuit.

19. The HOA also alleges that the defects identified within the townhomes within Midtown include problems associated with their original construction including cracking,

deflection, and displacement of brick veneer cladding. Ex. 4, 3rd Amd. Compl. ¶¶ 57, 62, Underlying Lawsuit.

20. The HOA alleges that these conditions have caused problems since the early summer of 2021 and that the exterior brick walls within Midtown continue to experience failures resulting from their defective design and construction. Ex. 4, 3rd Amd. Compl. ¶¶ 57, 66, 67, Underlying Lawsuit.

21. The HOA alleges that these latent defects, "in combination with fortuitous weather and continuous or repeated moisture/vapor seepage intrusion, and/or other similar events, have proximately damaged the Midtown Townhomes and have caused consequential damage." Ex. 4, 3rd Amd. Compl. ¶ 70, Underlying Lawsuit.

***The Policies Issued by Evanston to Mata***

22. Evanston issued three policies commercial general liability insurance to Aurelio Mata for effective periods from January 15, 2021 to January 15, 2022 (Ex. 1, Policy 1); January 15, 2022 to January 15, 2023 (Ex. 2, Policy 2); and February 3, 2023 to February 3, 2024 (Ex. 3, Policy 3).

23. Relevant to this matter, each Policy provides certain liability coverage subject to limits of $1 million per occurrence, $2 million for completed operations and a $2 million general aggregate limit. See Exs. 1, 2 and 3.

24. Each Policy's general liability insuring agreement provides as follows:

> ***COMMERCIAL GENERAL LIABILITY COVERAGE FORM***
>
> *Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.*
>
> *Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or*

*organization qualifying as a Named Insured under this Policy. The words "we", "us" and "our" refer to the company providing this insurance.*

*The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.*

*Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.*

***SECTION I – COVERAGES***

***COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY***

***1. Insuring Agreement***

> ***a.*** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" which this insurance does not apply. We may, at our discretion, investigate and "occurrence" and settle any claim or "suit" that may result. But:*
>
> > ***(1)*** *The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and*
> >
> > ***(2)*** *Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.*
>
> *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.*
>
> ***b.*** *This insurance applies to "bodily injury" and "property damage" only if:*
>
> > ***(1)*** *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]*

> ***(2)*** *The "bodily injury" or "property damage" occurs during the policy period . . . .*

* * *

***SECTION V – DEFINITIONS***

* * *

***13.*** *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions*

* * *

***17.*** *"Property damage means:*

> ***a.*** *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*
>
> ***b.*** *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

*For the purposes of this insurance, electronic data is not tangible property.*

*As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard of floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.*

Exs. 1, 2 & 3, Policies 1, 2 & 3, Form CG 00 01 04 13.

25. Thus, for there to be a duty to indemnify an insured for "property damage" under any particular Policy, there must be "property damage" which occurred during that Policy's effective period caused by an "occurrence" which is attributed to an Insured.

26. Similarly, for there to be a duty to defend an insured against a particular claim or suit, there must be a possibility that some or all of the alleged damages are covered by the terms of a particular Policy's insuring agreement. With respect to Coverage A – Bodily Injury And Property Damage Liability, this means that a claim or suit must identify potential "bodily injury" or "property damage" caused by an "occurrence" or accident attributable to the insured that took place during a Policy's effective period.

27. Section II of each Policy's Commercial General Liability Coverage Form details which entity or entities are an Insured. In pertinent part, this section states:

***COMMERCIAL GENERAL LIABILITY COVERAGE FORM***

* * *

***SECTION II – WHO IS AN INSURED***

**1.** *If you are designated in the Declarations as:*

* * *

**a.** *An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.*

* * *

Exs. 1, 2 & 3, Policies 1, 2 & 3, Form CG 00 01 04 13.

28. Each of the Policies' Declarations identify ***Aurelio Mata*** as the Named Insured. Exs. 1, 2 & 3, Policies 1, 2 & 3, MDIL 1000 08 11.

29. Thus, each Policy potentially provides coverage for Mata's legal liability for "property damage" caused by an "occurrence" that otherwise falls within that Policy's Insuring Agreement and not limited or excluded by that Policy's provisions.

30. Each Policy contains a variety of limitations, endorsements and exclusions which affect the scope of coverage articulated in the Insuring Agreement quoted above.

31. For example, each Policy specifically excludes coverage for damage associated with an insured's work on townhomes and other types of multi-unit residential construction, unless the insured worked on twenty (20) or fewer units within a particular multi-unit residential construction project.

32. Policy 1 contains the New Residential Work Limitation which states:

***NEW RESIDENTIAL WORK LIMITATION***

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE FORM*

***A.*** *The following are added to Paragraph* ***2.*** *Exclusions of Section* ***I*** *– Coverages, Coverage* ***A*** *– Bodily Injury And Property Damage Liability and Coverage* ***B*** *– Personal And Advertising Injury Liability:*

*This insurance does not apply to:*

***New Multi-Unit Residential Development Work***

*"Bodily injury", "property damage" or "personal and advertising injury" including losses within the "products-completed operations hazard" arising out of "your product" or "your work" related to any newly constructed residential:*

***(1)*** *Multi-family housing development in which each unit is individually titled, including but not limited to a duplex, condominium or townhouse development;*

***(2)*** *Housing cooperative development;*

***(3)*** *"Tract home development";*

***(4)*** *Planned unit development; or*

***(5)*** *Timeshare development.*

*However, this exclusion does not apply to:*

***(a)*** *"Your product" or "your work" related to any newly constructed "apartment structure" or*

> ***(b)*** *Your projects consisting of 20 or fewer units in any one development, regardless of the size of the development.*
>
> ***B.*** *With respect to this endorsement only, the following definitions are added:*
>
> *"Apartment structure" means a multi-family structure of units that are held for rental in which all units are owned by the same person or organization and not individually titled. "Apartment structure" includes the building and the individual units.*
>
> *"Tract home development" means a grouping of 20 or more single-family dwellings which:*
>
> ***a.*** *Are constructed in the same parcel, adjacent parcels or other parcels located within one geographic area that are considered to be a single project; and*
>
> ***b.*** *Share common or similar design elements, floor plans, blueprints, or architectural details.*

Ex. 1, Policy 1, Form MEGL 1628 08 17.

33. Similarly, Policies 2 and 3 contain the New Residential Construction Limitation which states:

> ***NEW RESIDENTIAL CONSTRUCTION LIMITATION***
>
> ***A.*** *The following is added to Paragraph 2. Exclusions of Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability and Coverage B – Personal And Advertising Injury Liability:*
>
> *This insurance does not apply to:*
>
> ***Multi-Unit Residential Developments***
>
> *"Bodily injury", "property damage" or "personal and advertising injury", including losses within the "products-completed operations hazard", arising out of "your product" or "your work" related to any newly-constructed residential:*
>
> ***(1)*** *Condominium;*
>
> ***(2)*** *Townhouse;*

> ***(3)*** *Cooperative; or*
>
> ***(4)*** *"Tract home".*
>
> *This exclusion does not apply:*
>
> ***(a)*** *To "your product" or "your work" related to any newly-constructed "apartment structure"; or*
>
> ***(b)*** *If "your product is provided to, or "your work" is performed on 20 or fewer units in any one development, regardless of the size of the development.*
>
> ***B.*** *The following definitions are added to the Definitions section:*
>
> *"Apartment structure" means a multi-family structure of units that are held for rental in which all units are owed by the same person or organization and not individually titled. "Apartment structure" includes the building and the individual units.*
>
> *"Tract home" means a grouping of more than 20 single-family dwellings which:*
>
> ***a.*** *Are constructed in the same parcel, adjacent parcels or other parcels located within one geographic area that are considered to be a single project; and*
>
> ***b.*** *Share common or similar design elements, floor plans, blueprints, or architectural details.*

Exs. 2 & 3, Policies 2 & 3, Form MEGL 1628 09 21.

34. Each Policy also excludes coverage for damage associated with the actual work performed by an insured. Within the Commercial General Liability Coverage Form contained in each Policy, this exclusion provides:

> ***COMMERCIAL GENERAL LIABILITY COVERAGE FORM***
>
> * * *
>
> ***SECTION I – COVERAGES***
>
> ***COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY***

* * *

***2. Exclusions***

*This insurance does not apply to:*

* * *

***l. Damage To Your Work***

*"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*

* * *

***SECTION V – DEFINITIONS***

* * *

***16.*** *"Products-completed operations hazard":*

***a.*** *Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:*

***(1)*** *Products that are still in your physical possession; or*

***(2)*** *Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:*

***(a)*** *When all of the work called for in your contract has been completed.*

***(b)*** *When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.*

***(c)*** *When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.*

*Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.*

**b.** *Does not include "bodily injury" or "property damage" arising out of:*

**(1)** *The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;*

**(2)** *The existence of tools, uninstalled equipment or abandoned or unused materials; or*

**(3)** *Products or operations for which the classification listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.*

* * *

**22.** *"Your work":*

**a.** *Means:*

**(1)** *Work or operations performed by you or on your behalf; and*

**(2)** *Materials, parts or equipment furnished in connection with such work or operations.*

**b.** *Includes:*

**(1)** *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and*

**(2)** *The providing of or failure to provide warnings or instructions.*

35. Each Policy also excludes coverage for damage which occurred or started to occur prior to their respective effective periods. For example, Policies 1, 2 and 3 contain the Exclusion for Continuous or Progressive Injury or Damage,

> ***EXCLUSION – CONTINUOUS OR PROGRESSIVE INJURY OR DAMAGE***
>
> *This endorsement modifies insurance provided under the following:*
>
> *COMMERCIAL GENERAL LIABILITY COVERAGE FORM*
>
> *The following is added to Paragraph **2.** Exclusions under Section **I** – Coverages, Coverage **A** – Bodily Injury And Property Damage Liability and Coverage **B** – Personal And Advertising Injury Liability:*
>
> *This insurance does not apply to:*
>
> ***Continuous or Progressive Injury Or Damage***
>
> *"Bodily injury", "property damage" or "personal and advertising injury" that:*
>
> ***(1)*** *First occurred, first began to occur, or is alleged to have first occurred;*
>
> ***(2)*** *Is alleged to be in the process of occurring to any degree; or*
>
> ***(3)*** *Is caused by or alleged to have been caused by incremental, continuous or progressive injury or damage arising from an "occurrence" or offense which first occurred, began to occur, or is alleged to have first occurred, prior to the effective date of this policy.*

Exs. 1, 2 & 3, Policies 1, 2 & 3, Form MEGL 0008 04 20.

***Original Tender of Defense in Underlying Lawsuit and Evanston's Coverage Determination***

36. Evanston received notice of the Underlying Lawsuit and undertook Mata's defense in the same in 2023.

37. The original information available regarding the Underlying Lawsuit did not identify Mata's scope or timing of work with any particularity.

38. However, during the course of discovery, additional information regarding Mata's scope and timing of work has been identified.

39. For example, Certificates of Occupancy for each of the fifteen buildings indicate that their construction was substantially complete between 2021 and 2022, as follows:

| **Building within Midtown:** | **Date of Certificate of Occupancy:** |
|---|---|
| A | 1/24/2022 |
| B | 11/18/2021 |
| C | 5/28/2021 |
| D | 7/27/2021 |
| E | 8/26/2021 |
| F | 12/22/2021 |
| G | 5/24/2022 |
| H | 11/20/2020 |
| I | 9/28/2021 |
| J | 5/14/2021 |
| K | 4/29/2021 |
| L | 11/25/2020 |
| M | 12/21/2020 |
| N | 1/29/2021 |
| O | 3/23/2021 |

40. Thirty-seven (37) of the townhomes within Midtown had brick veneer installed as their exterior facades.

41. Further, discovery completed in the Underlying Lawsuit has confirmed that Mata worked as a subcontractor during the construction of the Midtown townhomes and particularly installed brick veneer on at least twenty-nine (29) of the townhomes within the same.

42. Therefore, Evanston issued at least one Reservation of Rights to Mata identifying various potential coverage limitations contained in its Policies. Evanston also reserved its right to rely on other language within the Policies as a basis to further disclaim coverage in the event that

additional information was made available to Evanston which rendered such other language applicable.

43. Since issuing its Reservation(s) of Rights to Mata, Evanston has continued to defend Mata in the Underlying Lawsuit.

44. In addition to informal settlement negotiations taking place throughout 2026, mediation was conducted in the Underlying Lawsuit on May 19-20, 2026. Unfortunately, a resolution related to Mata's work within the Midtown development has not, to date, been reached.

45. The Underlying Lawsuit has been set as the backup date certain trial for the Charleston County jury trial roster beginning on January 25, 2027.

**<u>FOR A FIRST CAUSE OF ACTION</u>**
**(Declaratory Judgment – Duty to Defend Under the Policies)**

46. Evanston repeats and realleges each and every allegation contained in the Paragraphs above as if fully stated herein verbatim.

47. An actual controversy exists between Evanston and Mata as to whether and to what extent Evanston is obligated under the Policies to defend the Mata in connection with the claims asserted against it by the HOA (the Plaintiff in the Underlying Lawsuit) or any other party in the Underlying Lawsuit.

48. The Policies' terms, conditions, definitions, provisions, limitations, exclusions and endorsements, all of which speak for themselves, govern the rights, duties, and obligations of Evanston, if any, with regard to whether or to what extent Evanston is obligated under the Policies to defend Mata for any claims, judgment, or settlement in the Underlying Lawsuit.

49. Evanston has no duty to defend Mata in connection with any claim, judgment, or settlement in the Underlying Lawsuit to the extent that the damages sought are not the result of

"bodily injury" or "property damage" caused by an "occurrence" attributable to Mata under the Policies or involve damages that are otherwise excluded under the Policies.

50. Further, Evanston has no duty to defend Mata in connection with any claim, judgment, or settlement in the Underlying Lawsuit because each Policy contains one or more complete and unambiguous exclusion that precludes coverage for all damages sought against Mata in the Underlying Lawsuit.

51. Evanston has no duty to defend Mata in connection with any claim, judgment, or settlement in the Underlying Lawsuit because the entirety of the "property damage" allegedly attributable to Mata in the Underlying Lawsuit involves Mata's work on more than 20 townhomes within the Midtown development – work which is expressly and unambiguously excluded by the Policies' New Residential Work/Construction Limitations.

52. Evanston is entitled to a declaration as to the extent to which it is obligated under the Policies or otherwise, if at all, to defend or continue to defend Mata in connection with any claim, judgment, or settlement in the Underlying Lawsuit.

53. Further, Evanston is entitled to a declaration that it is entitled to withdraw from Mata's defense in the Underlying Lawsuit given the absence of any damages covered by the Policies.

**FOR A SECOND CAUSE OF ACTION**
**(Declaratory Judgment – Duty to Indemnify Under the Policies)**

54. Evanston repeats and realleges each and every allegation contained in the Paragraphs above as if fully stated herein verbatim.

55. An actual controversy exists between Evanston and Mata as to whether and to what extent Evanston is obligated under the Policies to indemnify Mata in connection with the claims

asserted against it by the HOA (the Plaintiff in the Underlying Lawsuit) or any other party in the Underlying Lawsuit.

56. The Policies' terms, conditions, definitions, provisions, limitations, exclusions and endorsements, all of which speak for themselves, govern the rights, duties, and obligations of Evanston, if any, with regard to whether or to what extent Evanston is obligated under the Policies to indemnify Mata for any claims, judgment, or settlement in the Underlying Lawsuit, or any other claims asserted or that might be asserted against Mata with regard to the facts and circumstances giving rise to the claims asserted in the Underlying Lawsuit.

57. Evanston has no duty to indemnify Mata in connection with any claim, judgment, or settlement in the Underlying Lawsuit to the extent they involve damages that do not constitute "bodily injury" or "property damage" caused by an "occurrence" attributable to Mata under the Policies or involve damages that are otherwise excluded under the Policies.

58. Evanston has no duty to indemnify Mata in connection with any claim, judgment, or settlement in the Underlying Lawsuit because each of the Policies contains one or more complete and unambiguous exclusion of all the Underlying Lawsuit's alleged damages from their coverage.

59. Evanston has no duty to indemnify Mata in connection with any claim, judgment, or settlement in the Underlying Lawsuit because the entirety of the "property damage" allegedly attributable to Mata in the Underlying Lawsuit involves Mata's work on more than 20 townhomes within the Midtown development – work which is expressly and unambiguously excluded by the Policies' New Residential Work/Construction Limitations.

60. Further, Evanston has no duty to indemnify Mata in connection with any claim, judgment, or settlement in the Underlying Lawsuit to the extent that such claim, judgment, or

settlement relates to damages that are excluded by one or more of the Policies' Exclusions for Continuous or Progressive Damage. Particularly:

a. To the extent that any damages attributable to Mata first occurred or started to occur prior to Policy 1's effective period (January 15, 2021 to January 15, 2022), there is no coverage available under Policy 1 for such damages as a result of Policy 1's Exclusion for Continuous or Progressive Injury or Damage.

b. To the extent that any damages attributable to Mata first occurred or started to occur prior to Policy 2's effective period (January 15, 2022 to January 15, 2023), there is no coverage available under Policy 2 for such damages as a result of Policy 2's Exclusion for Continuous or Progressive Injury or Damage. This includes continuous or progressive damage associated with the construction of Buildings O, K, J, C, D, E, I, B and F – buildings for which Certificates of Occupancy were issued prior to January 15, 2022.

c. To the extent that any damages attributable to Mata first occurred or started to occur prior to Policy 3's effective period (January 15, 2023 to January 15, 2024), there is no coverage available under Policy 3 for such damages as a result of Policy 3's Exclusion for Continuous or Progressive Injury or Damage. This includes continuous or progressive damage associated with the entirety of Mata's work within the Midtown development: the construction of Buildings O, K, J, C, D, E, I, B and F – buildings for which Certificates of Occupancy were issued prior to January 15, 2022 – and the construction of Buildings A and G – buildings for which Certificates of Occupancy were issued prior to January 15, 2023.

61. Finally, Evanston has no duty to indemnify Mata in connection with any claim, judgment, or settlement in the Underlying Lawsuit to the extent that such claim, judgment, or settlement relates to damages that are excluded by the Policies' Exclusions for Damage to Your Work, Damage to Property, or any other applicable exclusion.

62. Evanston is entitled to a declaration as to the extent to which it is obligated under the Policies or otherwise, if at all, to indemnify Mata in connection with any claim, judgment, or settlement in the Underlying Lawsuit, or any other claim asserted or that might be asserted against

Mata with regard to the facts and circumstances giving rise to the claims asserted in the Underlying Lawsuit.

WHEREFORE, Evanston requests that the declaratory relief requested above be entered in favor of Evanston and further that the Court enter judgment in Evanston's favor for attorney's fees and costs and for such other relief as the Court may deem just and proper.

HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC 29401/02
Ph: (843) 577-4435
Fx: (843) 722-1630
E: info@hoodlaw.com

***s/ J. Blanton O'Neal, IV***
J. Blanton O'Neal, IV (7602)
blanton.oneal@hoodlaw.com
Virginia R. Floyd (12212)
virginia.floyd@hoodlaw.com

***Attorneys for the Plaintiff***
***Evanston Insurance Company***

**November 13, 2026**
Charleston, South Carolina